MURDOCK, Justice.
Katachia Dale, as administratrix of the estate of her sister Mary Patricia Gulley, deceased, appeals from a summary judgment entered by the Baldwin Circuit Court in favor of Dr. Gary Kolb on her medical-malpractice claim. We reverse the judgment of the trial court.

I. Facts and Procedural History

Gulley had been experiencing severe abdominal pain for two weeks when she reported to the North Baldwin Infirmary on May 5, 2006, where she received treatment for the pain. She again reported to the North Baldwin Infirmary on May 12, 2006, complaining of excruciating abdominal pain. Dr. Stephen Simpson diagnosed Gulley with a urinary-tract infection, provided her with medication, and discharged her.
On May 16, 2006, Gulley visited Bay Minette Family Practice and was seen by Dr. Kolb. She complained of dizziness, vomiting, and severe abdominal pain. Dr. Kolb ordered tests and diagnosed Gulley as suffering from anemia. He scheduled Gulley for a consultation with a gastroen-terologist on May 18, 2006. On May 17, 2006, Gulley died as a result of complications from peritonitis.[1]
On May 2, 2008, Dale, in her capacity as administratrix of Gulley’s estate, filed an action in Baldwin Circuit Court alleging medical malpractice and wrongful death against the North Baldwin Infirmary, Dr. Simpson, Bay Minette Family Practice, and Dr. Kolb.[2] As to Dr. Kolb and Bay Minette Family Practice, Dale alleged that Dr. Kolb had breached the standard of care in a number of ways, including failing to diagnose diverticulitis, failing to perform an adequate abdominal examination, failing to immediately admit Gulley to a hospital based on her symptoms, and failing to order certain tests that could have revealed the seriousness of Gulley’s medical condition.
On September 25, 2008, Dr. Kolb filed a response to Dale’s second set of interrogatories and request for production of documents. That submission contains the following question and answer:
“13. Were you practicing in an area of your specialization(s) when you saw and treated Mary Patricia Gulley, deceased, on May 16, 2006? If so, what specialty?
*253 “RESPONSE: Yes: I was practicing within my specialty of family practice as a physician board-certified by the American Osteopathic Board of Family Physicians.”
Dr. Kolb provided a curriculum vitae (“CV”) with this submission that also stated his board certification, as well as a copy of his board certification.
On March S, 2009, Dale’s attorney deposed Dr. Kolb. The deposition included the following exchange:
“Q. [Dale’s attorney:] Okay. Are there other boards that can certify you as an osteopathic family physician?
“A. [Dr. Kolb:] Not that Pm aware of.
“Q. Okay. So the American Osteopathic Board of Family Physicians, to your knowledge, is the only board that certifies osteopathic physicians?
“A. That’s correct. In family practice. “Q. In family practice, correct?
“A. Yes. Yes.
“Q. And so I assume — -And so they’re a national organization, correct?
“A. Yes, sir.”
On March 31, 2009, Dr. Kolb[3] filed a motion for a summary judgment. Dr. Kolb submitted an affidavit in support of the motion in which he stated, in pertinent part:
“I was in 2006 and continue to be a licensed, practicing physician in the State of Alabama. I was in 2006 and continue to be board-certified by the American Osteopathic Board of Family Physicians. I practice in the specialty of family practice; am trained and experienced in the specialty of family practice; and hold myself out as a specialist in the field of family practice. I am familiar with the standard of care of family practice physicians board-certified by the American Osteopathic Board of Family Physicians.
[[Image here]]
“Based upon my education, experience and training, I met the standard of care of family practice physicians board-certified by the American Osteopathic Board of Family Physicians during my care of Mary Gulley on May 16, 2006. Furthermore, nothing I did or failed to do proximately caused the death of Ms. Gulley.”
On April 16, 2009, Dale filed her response to Dr. Kolb’s summary-judgment motion. Along with her response, Dale submitted an affidavit from Dr. Michael Hahalyak in which Dr. Hahalyak asserted that Dr. Kolb had “breach[ed] the standard of care” in a number of ways that caused or contributed to Gulley’s death. The affidavit stated, in pertinent part:
“My name is Michael Hahalyak. I am a doctor of osteopathic medicine licensed to practice in the State of Pennsylvania. I am and was at the time of Dr. Kolb’s treatment of Mary Patricia Gulley in May 2006, board certified in the field of Family Medicine, trained and experienced in the practice of Family Medicine, a specialist in Family Medicine, and working in that capacity. A copy of my most recent curriculum vitae is attached to this Affidavit.”
The CV attached to Dr. Hahalyak’s affidavit stated that he is board-certified by the “American Board of Family Practice.”
The trial court set a hearing on Dr. Kolb’s motion for a summary judgment for April 21, 2009. On April 20, 2009, Dr. Kolb filed a motion to strike Dr. Hahal-yak’s affidavit because it failed to state by what American board Dr. Hahalyak is certified. The motion to strike also argued *254 that Dr. Hahalyak’s CV could not be considered by the trial court because it was not properly sworn or certified. Dr. Kolb noted, however, that, even if the CV submitted with Dr. Hahalyak’s affidavit was considered, that CV states that Dr. Hahal-yak is certified by the American Board of Family Practice and that this is not the same board by which Dr. Kolb is certified (the American Osteopathic Board of Family Physicians). Accordingly, Dr. Kolb argued that Dr. Hahalyak could not be certified as an expert and that, without expert testimony to respond to Dr. Kolb’s affidavit, Dr. Kolb’s motion for a summary judgment was due to be granted.
Dr. Kolb submitted an affidavit along with his motion to strike in which he stated, in pertinent part:
“I am familiar with the organization previously known as the American Board of Family Practice which, in 2005, changed its name to the American Board of Family Medicine. This is an organization which is separate and distinct from the organization through which I am board-certified, the American Osteopathic Board of Family Physicians.”
The hearing on Dr. Kolb’s motion for a summary judgment was held as scheduled on April 21, 2009. At the outset of the hearing, the following exchange occurred:
“THE COURT: Let me state for the record that Dr. Kolb is a personal friend of mine. And before I moved we attended the same church, but I am making that known to everybody. But I don’t think I’m disqualified.
“[Dr. Kolb’s counsel]: Yes, sir.
“THE COURT: But, I mean, if you want to, you know, talk with your clients, I’ll delay ruling on the motion.
“[Dale’s counsel]: Okay.
“THE COURT: All right. Go ahead.”
In the hearing, Dale’s counsel made an oral motion for a continuance, arguing that “justice” required a continuance because counsel had relied upon Dr. Kolb’s statement in his deposition that there was only one board that certified osteopathic practitioners of family medicine and that he had retained an expert who was board-certified in osteopathic family medicine. Dale’s counsel conceded that Dr. Kolb had not misled him as to which board had certified Dr. Kolb.
On April 22, 2009, Dale’s counsel filed an affidavit pursuant to Rule 56(f), Ala. R. Civ. P., requesting a continuance in order to “prepare an affidavit to either show that Drs. Hahalyak and Kolb were in fact certified by the same Board, or [to] prepare an affidavit of an appropriate expert to file in response to [Dr. Kolb’s] Motion for Summary Judgment.”
On April 28, 2009, the trial court issued an order that provided, in pertinent part:
“The Court determines that Dr. Kolb gave [Dale] the correct name of the Board certifying him in family medicine and did not mislead [Dale]. Under the authority of Ex parte Wal-Mart Stores, Inc., 689 So.2d 60 (Ala.1997), the Court has no discretion as to granting a continuance to find a new expert for [Dale ]. Therefore, the Court grants Defendant, Gary Kolb’s, Motion for a Summary Judgment.”
(Emphasis added.)
On May 28, 2009, Dale filed a motion to alter, amend, or vacate the summary judgment in favor of Dr. Kolb. The trial court denied the motion on the following day. On July 20, 2009, the trial court certified its summary judgment in favor of Dr. Kolb as final under Rule 54(b), Ala. R. Civ. P. Dale appeals from that judgment.

*255
II. Standard of Review

Our standard of review of a summary judgment is well settled:
“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion....’ McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
“ ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).”
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala.2006).

III. Analysis

Dale offers several arguments as to why the trial court erred in entering a summary judgment for Dr. Kolb. She first insists that Dr. Hahalyak’s affidavit was sufficient to meet the requirement for expert testimony in a medical-malpractice action, i.e., that the proffered expert must be a similarly situated health-care provider. She notes that Dr. Hahalyak stated in his affidavit that he is board-certified in the practice of family medicine and that he is a specialist in family medicine. Dale argues that this was sufficient, given that Dr. Kolb testified by deposition that only one board certified practitioners of osteopathic physicians in family practice.
Section 6-5-548(c), Ala.Code 1975, requires that a proffered expert in a medical-malpractice action:
“(1) [Be] licensed by the appropriate regulatory board or agency of this or some other state.
“(2) [Be] trained and experienced in the same specialty.
“(3) [Be] certified by an appropriate American board in the same specialty.
“(4) [Have] practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred.”
Section 6-5-548(e), Ala.Code 1975, explains:
“(e) The purpose of this section is to establish relative standard of care for health care providers. A health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on breach of the standard of care only if he or she is a ‘similarly situated health care provider’ defined above. It is the intent of the Legislature that in the event the defendant health care provider is certified by an appropriate *256 American board, or in a particular specialty and is practicing that specialty at the time of the alleged breach of the standard of care, a health care provider may testify as an expert witness with respect to an alleged breach of the standard of care in any action for injury, damages, or wrongful death against another health care provider only if he or she is certified by the same American board in the same specialty.”
(Emphasis added.)
In Johnson v. Price, 743 So.2d 436 (Ala.1999), this Court left no doubt that the legislature intended that an expert in a medical-malpractice action must be certified by the same American board in order to testify as to the standard of care in the action.[4] Concerning § 6-5-548(e), Ala. Code 1975, the Johnson Court stated:
“The intent of the Legislature here is overwhelmingly clear from the plain language of this statute. Of particular importance in this case is the phrase: ‘only if he or she is ceHified by the same American board in the same specialty.’ § 6-5-548(e). (Emphasis added.) By adding this phrase, the Legislature unequivocally stated that when litigants are establishing the standard of care for a health-care provider, the only instance in which a court can consider the expert testimony of another health-care provider is an instance in which the expert witness is certified by the very same organization that certified the defendant health-care provider; by this rule, the statute ensures that the expert witness will have the knowledge necessary to fully inform the jury of the standard of care to which the defendant is to be held.”
743 So.2d at 438 (second emphasis added). In Johnson, the defendant was certified by the American Osteopathic Board of Surgery, while the plaintiffs proffered expert was certified by the American Board of Surgery. The Johnson Court concluded that the fact that the two boards appeared to certify practitioners in the same area of medicine did not matter:
“The fact that [the two boards] may have the same purpose, that they may certify providers for the same procedures, or that they may require the same qualifications would be irrelevant. Section 6-5-548(e) plainly states that if the two providers are not certified by the same organization, then one cannot testify as to the standard of care applicable to the other.”
743 So.2d at 438.
Dr. Hahalyak’s CV states that he is certified by the American Board of Family Practice. Unfortunately for Dale, this is not the same board that certified Dr. Kolb (the American Osteopathic Board of Family Physicians); Dale does not contend otherwise. Our legislature has stated that the fact that two boards certify two different physicians to practice in the same specialty is not enough for one physician to testify as an expert in a medical-malpractice action against the other.
Dale also contends that the trial judge erred in failing to recuse himself from this case because of his admitted friendship with Dr. Kolb. As we recounted in the rendition of the facts, the judge informed the parties at the outset of the hearing on the summary-judgment motion that “Dr. Kolb is a personal friend of mine.” The judge offered to delay ruling *257 on the motion for a summary judgment if either of the parties wanted to object to the judge’s continuing to sit on the case. Neither party objected or filed a motion seeking the judge’s recusal. Dale made her first objection to the trial judge’s decision to remain on the case in her motion to alter, amend, or vacate the summary judgment.
“ ‘ “To permit a party to disqualify a judge after learning how the judge intended to rule on a matter would permit forum-shopping of the worst kind. It would also be inequitable, because it would afford the moving party an additional opportunity to achieve a favorable result while denying a similar opportunity to its adversary. For these reasons, it is generally agreed that a party who has a reasonable basis for moving to disqualify a judge should not be permitted to delay filing a disqualification motion in the hope of first obtaining a favorable ruling, and then complain only if the result is unfavorable to his cause.”
“‘Richard E. Flamm, Judicial Disqualification § 18.2.2 at 532-33 (1996).’
“City of Bessemer v. McClain, 957 So.2d 1061, 10[8]9 (Ala.2006) (Parker, J., statement of recusal).”
Price v. Clayton, 18 So.3d 370, 379 (Ala.Civ.App.2008). See also Ex parte Parr, 20 So.3d 1266, 1270 (Ala.2009) (noting that “‘[a] motion to recuse “should be filed at the earliest opportunity because ‘requests for recusal should not be disguises for dilatoriness on the part of the [moving party ].’ ” ’ ” (quoting Price v. Clayton, 18 So.3d at 376, quoting in turn Johnson v. Brown, 707 So.2d 288, 290 (Ala.Civ.App.1997), quoting in turn Baker v. State, 52 Ala.App. 699, 700, 296 So.2d 794, 794 (Ala.Crim.App.1974))).
The trial judge informed Dale of his personal friendship with Dr. Kolb at the beginning of the hearing on the motion for a summary judgment and offered Dale an opportunity to object. She did not do so. The trial court issued its order on the summary-judgment motion seven days later, and in the time between the hearing and the entry of the judgment Dale likewise did not file a motion seeking the recusal of the trial judge. Only after the trial court ruled in favor of Dr. Kolb and against Dale on the summary-judgment motion did Dale object to the trial judge’s remaining on the case. Dale was dilatory on this matter, and, as a result, she waived the issue of the judge’s recusal. We therefore will not consider this argument as a reason for reversing the trial court’s judgment.
Among other arguments, Dale also argues that the trial court erred as a matter of law in holding that it had no discretion to grant a continuance to allow Dale additional time to file an opposition to Dr. Kolb’s summary-judgment motion that would be supported by an affidavit from an expert certified in family practice by the same board that certified Dr. Kolb. She argues that Dr. Kolb’s deposition testimony stating that he was aware of only one board that certified osteopathic physicians in family practice led her counsel to believe that Dr. Hahalyak was qualified as an expert. Her counsel was not aware of a question in this regard until Dr. Kolb filed his motion to strike Dr. Hahalyak’s affidavit the day before the scheduled hearing on Dr. Kolb’s motion for a summary judgment. Dale insists that, at that point, her counsel had insufficient time to prepare a response to Dr. Kolb’s motion to strike and, thus, that the trial court should have granted her counsel’s request at the hearing for a continuance. Dale notes that the day after the hearing her counsel filed an *258 affidavit explaining the reasons for needing a continuance as required by Rule 56(f), Ala. R. Civ. P.
Dale argues that the trial court erred as a matter of law in holding as it did that “[u]nder the authority of Ex parte Wal-Mart Stores, Inc., 689 So.2d 60 (Ala.1997), the Court has no discretion as to granting a continuance to find a new expert for [Dale]. Therefore, the Court grants Defendant, Gary Kolb’s, Motion for a Summary Judgment.” (Emphasis added.) We agree.
As noted, the trial court construed Ex parte Wal-Mart Stores, Inc., 689 So.2d 60 (Ala.1997), as supporting its holding that it had no discretion in granting a continuance under the circumstances presented here. As Dale argues, however, the facts of this case are clearly distinguishable from those in Wal-Mart. In Wal-Mart, the trial court took it upon itself to deny properly supported summary-judgment motions on the ground that “the plaintiffs are entitled to conduct discovery before being required to respond to the summary judgment motions,” 689 So.2d at 61, despite the fact that the plaintiffs had not made this argument to the trial court and had “not in any way assertfed] that a lack of discovery had caused them to be unable to adequately oppose the summary judgment motions.” 689 So.2d at 62. Although the issue here is not one of formal discovery, in the present case Dale clearly filed a motion for a continuance providing reasons she should be allowed additional time to supplement her response to Dr. Kolb’s motion for a summary judgment. Unlike Wal-Mart, there is no issue here of the trial court’s sua sponte taking a position on behalf of a party that the party has not taken for itself or, more specifically, granting a continuance under Rule 56 that the beneficiary of the continuance has not requested.[5] We therefore find the present case distinguishable from Wal-Mart. Accordingly, we pretermit other issues raised by Dale on appeal and remand the case to the trial court for further' consideration of Dale’s request for a continuance.

IV. Conclusion

On the basis of the forgoing, we reverse the summary judgment of the trial court in favor of Dr. Kolb and. remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, WOODALL, and BOLIN, JJ., concur.
STUART, J., recuses herself.

. Peritonitis is an inflammation of the wall of the abdomen.

. This appeal solely concerns Dale’s action against Dr. Kolb.

. Bay Minette Family Practice joined Dr. Kolb in the motion for a summary judgment. However, the summary judgment appealed from was entered only as to Dr. Kolb.

. In Ex parte Waddail, 827 So.2d 789, 793 (Ala.2001), we held that § 6-5-548(e), Ala. Code 1975, applies only to specialists. Both parties in this case agree that a specialty is at issue; therefore, we do not have before us any question as to the applicability of subsection (e) in this case.

. Dale notes that her motion for a continuance was filed as soon as she was able to prepare it and before the court ruled on Dr. Kolb’s motion for a summary judgment, whereas in Wal-Mart no motion was ever filed and no reasons were ever given as to the need for a continuance.